Howard A. FRIEDMAN,
Linda A. FRIEDMAN, Petitioners

vs.

Margaret E. HOLLAND TAYLOR,
Joseph KLYNE, Leonard SIMS, John
SIMS, Danald E. SIMS, Helen V. SIMS,
Robert I. SIMS, Respondents

No. 40801

Land Court Division
Trial Court of the
Commonwealth of Massachusetts

January 19, 1982

Mario Misci, Counsel for plaintiff.
Frank W. Cormack, counsel for Klyne,
Leonard Sims, John Sims.
Pro Se, counsel for Holland Taylor,
Donald Sims, Helen Sims, & Robert
Sims.

## DECISION

Howard A. Friedman and Linda A. Friedman seek to register their title to the premises at 23 Beachview Avenue in Saugus, in the County of Essex, containing about 7,690 square feet and shown on a plan entitled "Plan of Land in Saugus, MA." dated April 2, 1980, by Town Engineering Corp., filed with the petition in this case and introduced at the trial as Exhibit No. 1 (the "Plan"). The locus is comprised of three lots shown on a recorded plan entitled "Beachview Park, Saugus, Massachusetts, Aug., 1900 by Wm. J. Coughlin", recorded with the Essex South District Registry of Deeds, Book 1617, Page 1 at Lots 178, 179 and 180. The contest in this case relates only to the title to Lot 180 which comprises the easterly 25 feet of locus, and includes the side yard of the house on the property. No question has been raised as to the petitioners' title to Lots 178 and 179.

Lot 180 was acquired in 1913 by Clara B. Sims,[1], who died intestate owning this lot on February 3, 1939, survived by a husband, Robert I. Sims, by four children and three grandchildren, presumably the children of a deceased daughter. In 1953, Clara's husband, Robert, died testate, survived by the same children and grandchildren; his will devised all his property, real and personal, to his som, Earl R. Sims. Subsequently, Earl conveyed Lot 180 to the plaintiffs' predecessor in title, Diego Nicolo. In fact, Earl had record title only to his father's undivided one-third interest and to his own undivided two-fifteenths interest inherited from his mother for a total of an undivided seven-fifteenths interest; he did not have the entire record title, his siblings and his nieces and nephew collectively having an eight-fifteenths interest inherited from their mother or grandmother, as the case may be.

---

1. In the deed to Mrs. Sims, the grantee's name is spelled with two "m's" but other instruments in the abstract suggest this was an error.

Notice accordingly was given by the Land Court to those parties recommended by the Land Court Examiner who appeared to have the record title to the remaining undivided eight-fifteenths interest, and answers were filed on behalf of Joseph Sims, Klyne Sims, Leonard Sims and John Sims; in addition, **pro se** appearances, but no answers, were filed on behalf of Robert J. Sims, Helen V. Sims and Donald E. Sims. Subsequently, a motion to strike the appearances of the latter three parties for failure to answer was filed on behalf of the petitioners, and a decision thereon was reserved by the Court until the trial on the merits.

A trial was held at the Land Court on December 14, 1981, at which a stenographer was sworn to record and transcribe the testimony. Two witnesses testified at the trial, and four exhibits were introduced into evidence. They are incorporated herein for the purpose of any appeal.

The first witness to testify was Elizabeth Quinlan, Chief Clerk in the Assessors' Office in the Town of Saugus, who testified from the records before her that in 1956 the three lots comprising locus, Lots 178, 179 and 180, were assessed for land only to Diego Nicolo and that in 1957, a dwelling thereon was also assessed to him. This leads to the conclusion that the house was built during 1956. The records showed that in 1968, the assessed owners were changed to Diego Nicolo and Angelina B. D'Amico and in 1970 to Mrs. D'Amico alone.

The other witness at the trial was Marilyn O. Raponi, the second daughter of Diego Nicolo, her older sister being said Angelina B. D'Amico. She testified that she was born in 1928 and raised in Saugus when the dwelling house on the land sought to be registered was built by her father in 1956. Her father, mother, and brother lived there after the completion of the house. The garden and flowers were tended by her parents. In 1967, her parents moved next door to the older sister's house, said Angelina D'Amico. The property is fenced along both sides and in the front. Previously, the rear line was not fenced, but it presently is. On March 1, 1969, her father Diego Nicolo died, and her sister Angelina took over the property for her mother and rented it. Her mother died on April 21, 1975, and her sister continued to rent it to two tenants who were not family members. In 1981, the property was conveyed to the petitioners, Angelina's son-in-law and daughter, the latter being the witness's niece, and a granddaughter of Diego Nicolo. The driveway is to the right of the house as you face it, and it is that portion of locus, old Lot 180, to which the title is disputed in the present proceeding.

After the conclusion of the evidence, the attorney who had appeared for some of the respondents acknowledged that the rights of his clients had been lost and requested the Court to explain their position in view of the undisputed evidence of adverse possession by Diego Nicolo and members of his family for more than twenty years. During the bench conference, one of the respondents, Robert J. Sims, who had appeared **pro se**, but who had never filed an answer, raised the question of his minority during some of the period necessary to establish title by adverse possession. Several respondents who were present at the trial claimed under Leonard R. Sims, a son of Robert and Clara. It was stated in open Court that Leonard had died in 1966, survived by his wife, Helen, and apparently by at least five children, Leonard, Robert, Joseph, Donald and Lenore.[2] Only Robert, one of the sons of Leonard and Helen, alone of the respondents present in Court or represented by counsel contended that the petitioners' claim of title by adverse possession was affected by his minority. Donald, said to be ill, was not present at the trial, and no birth certificate for him was exhibited to the

---

2. The respondent Margaret E. Holland Taylor was a granddaughter of Clara. The relationship of John and Klyne to Clara was not made clear. Klyne appears to another son of Leonard and Helen.

Court. His mother who was in Court did claim on his behalf that his rights also were affected by his minority during some of the pertinent time.

It is clear from the evidence set forth above that the petitioners have established title by adverse possession as against the entire world other than arguably Robert J. Sims and perhaps his brother, Donald. Since these respondents appeared **pro se,** the Court carefully reviewed the case law and statutes in an effort to determine the rights of one whose predecessor was of age when the period of adverse possession began to run and whose interest vested thereafter during the running of the twenty year period at a time when the party was a minor. No definitive answer was found, an interesting legal question being presented as to the effect of minority on the petitioners' claim to title by adverse possession.

The facts appear to be as follows: the father of Robert was Leonard R. Sims, who in turn was a son of Robert and Clara. Leonard was said to have died in 1966, at which time one-half the period of time for acquisition of title by adverse possession had run. Leonard never brought any action to recover possession, and if he had not died, his rights would have been barred ten years later, in 1976. No probate of his will, if any, or administration of his estate was brought. His son, Robert John Sims, was born on July 20, 1959, was seven years old when his father died and came of age in 1977.

G.L.c. 260, § 21 requires that an action for the recovery of possession of land must be commenced within twenty years. This is the counterpart to the rule as to the acquisition of title by adverse possession. Section 25 of said chapter, now repealed, provided as follows:

> "If, when such right of entry or of action **first accrues,** the person entitled thereto is a minor, or is insane, imprisoned or absent from the United States, he, or a person claiming under him, may make the entry or commence the action within ten years after such disability is removed." (Underlining added)

I interpret this language as applying to the time of accrual of the original cause of action, in this instance 1956, and not to the time when Leonard's widow and children succeeded to his rights. If the latter, the effect of its repeal would have to be considered. If this be the correct interpretation, then the statutes were and are silent, as to the effect, if any, of the minority of a descendant of a person entitled to bring such an action. Early case law did establish:

> "the principle that if there has been a disseisin when the owner is subject to no disability, and after the lapse of time reasonably sufficient to enable him to adopt all necessary measures for the protection of his rights, a disability occurs before he has resorted to or adopted any such means it will not interfere with, delay or postpone the time for the operation of the statute of limitations. The same rule must for the same reason prevail in relation to easements or other rights acquired by prescription, or to titles established and confirmed by open, adverse possession. It is apparent, therefore, that the ruling in this case which permitted the deduction, in estimating the twenty years of adverse possession, of the time during which the plaintiff was under coverture, was erroneous, and that for this cause the verdict rendered in her behalf must be set aside."

See, **Currier v. Gale,** 3 Allen, 328 (1862), commenting on **Allis v. Moore,** 3 Allen, 306 (1861). In the **Currier** case, the Court held that if an owner of land was disseised of his land while subject to no disability, any subsequent disability that occurred after a lapse of time reasonably sufficient to enable him to assert his rights would not prevent the disseisor's title from

maturing by fulfilling the requirements of adverse possession.

The present case is not presisely within the holding of Currier, since the respondent Robert's disability came before, rather than after, his interest first accrued. However, even if his minority at his father's death gave him opportunity to claim his rights after he came of age, four years was adequate for him to do so, and any action by him is now time barred. The **Currier** Court thought one year to be sufficient. The present limitation on tort actions is three years. By analogy, it does not seem unreasonable on the facts here to rule that the respondent Robert J. Sims' rights are barred by the passage of time. Without evidence as to Donald's situation, a similar result must be reached as to him.

I, therefore, find and rule that the petitioners have acquired title by adverse possession and by deed to the premises shown on the Plan. As set forth above, I have studied the question presented by the minority of Robert and researched it thoroughly in order to satisfy those who appeared **pro se**. Even without counsel, however, procedure followed by parties in litigated matters, should not violate court rules. Certain of the respondents, including Robert J. Sims and Donald E. Sims, did not answer, and the petitioners' presentation of their case was prejudiced by the surprise engendered by this failure. Under these circumstances, it is only equitable to allow the petitioners' motion to default for failure to answer, and I do so in the case of the applicable respondents.

A decree may be entered registering and confirming the petitioners' title subject to such matters as appear in the abstract and are not in issue here.

Decree accordingly.

**Marilyn M. Sullivan, Justice**